The fifth case on this trial is 2-0-8-1273, the building of Roselle v. Illinois Labor Relations Board at all. Representing the account is Carol R. Patterson and representing the Illinois Labor Relations Board is Gerald S. Pulse and representing the Roselle Professional Firefighters Association is Ms. Lisa Moss Council for the Village, have you folks worked out some arrangement here? Yes, Your Honor. I'll go first and I'm wondering if there are at least five minutes for Ms. Moss. Okay, that's fine. Council for the Village, you can proceed then. Thank you. Let me please the Court. I'm Carl Otteson on behalf of the Village of Roselle, appellant in this matter. Rather than start with the merits, I guess we'll start with the procedural issues, which seem to be what is taking control of this case. First issue is the time of filing petition for review and pursuant to Section 9I of the Illinois Public Labor Relations Act. Thirty-five days from service of an order is the time period within which the appellant wishes to file an appeal of the Labor Board decision with respect to certification issues. In this case, apparently it was issued on November 10, 2008, in order by the Executive Director of the Labor Board, Mr. John Brosnan, and it was allegedly mailed from the Illinois Labor Relations Board Springfield office to the parties on that day. The union's attorney acknowledges receipt of a copy of that order sometime after November 10, 2008. Don't know what date Ms. Moss received it. The Village did not receive the order and the Board has no proof of service on the Village. Per the Board's own rules, Section 1200.30c, service is then presumed to be complete three days after mailing if the proof of service shows the document was properly addressed. This presumption, though, can be overcome per the Board's rule again, Section 1200.30c, with evidence the document was either not delivered or was delivered at some later date. We have no knowledge of the proper addressing. We do know, though, that I met personally with the Executive Director of the Labor Board at the Chicago office during a break in a hearing that Ms. Moss and I were involved in in another municipality. We were there, Mr. Brosnan and I, to discuss our joint presentation at the Kent Labor Law Conference, and I asked whether the Rozelle decision had been issued. He simply said, I think so, and I'll get you a copy, and if it's been issued, I'll put it up front at the reception desk. The conclusion of the hearing that day left the hearing room down the elevators without going by the reception desk. Next week, November 19, we resumed the Oak Lawn hearing. On my council table when I got to the hearing room that day was an envelope with my name on it, which had in it the order dated November 13, 2008, of the certification of representative in this matter. So the first time that the village of Rozelle received any order of any kind, and the only order of any kind we've ever been served, was on November 19, 2008. Well, what happened on November 13? You're disputing the fact that there was an actual notice of the issuance of the substance of the order on November 13? Well, Mr. Brosnan's words to me were, I think it already issued, Carl. I'll check and I'll get you a copy if it has. So I didn't know at that time that it had, in fact, been issued at any particular time, but I did go back to the board for a hearing the next week, and they then gave me an envelope with the order in it. We did not know of a second order until the filing of the administrative record in this case, having November 10 order. The wording is slightly different, but the merits of this case are identical with respect to either the November 13 or the November 10 order. And your position is that the board itself has a rule that the board didn't follow its own rule, or it doesn't have in the file a certification that it mailed a copy to you? I believe the record reflects that there was a certificate of service issued on November 10 with the November 10 order, and that was filed by the State Labor Board. It's just it was never received by me or the Village of Roselle. But in the record there's an indication that, in fact, they sent it to you. Correct. But you say you overcome that presumption by saying you didn't get it. Correct. And asking if it had been issued and asking for a copy, and then later getting one that's dated November 13, not November 10. So by getting the November 13 order, I had no reason to believe that the order had been issued previous to that date. As the executive director had indicated, he thought it had already been issued on the 13th. That wasn't a, for certain, Carl, this has already been done, we did it three days ago, statement. It was, I believe it has been issued. Let's move forward and talk about your notice of appeal. Okay. The notice of appeal, the petition for review, notices of filing each of those, and the certificate of service were filed by certified mail, mailed November 18th with a meter stamp from our office in Naperville to this court's clerk's office, received by the clerk, signed for by the clerk with a return receipt sent back to our office, indicating it was received here on November 19th, December 19th. And does it recite in it what was mailed from your office to here? I'm sorry? Does the record recite what you just said? You say there's a record that shows a receipt from the post office, that something was sent here. Correct. It does not, on the receipt, it doesn't indicate the five documents that were included with that. How about the affidavit? The affidavit with respect to the certificate of service and the notice of filing indicate that on December 18th, 2008, the villages appeal was filed with the court. And then there's, but there's. It says that? That's what the petition for review and the notice of appeal indicate that it's being filed on the 18th. The affidavit that you sent out, the affidavit of service, did it miss the clerk's office on the affidavit? The certificate of service, the fifth document, does not state that specifically, no. That was, the certificate of service is signed by Matt Reschle of my office on the 18th and was received by this court on the 19th. So it was not received on the 18th. Isn't that a jurisdictional issue? It becomes a jurisdictional issue. And with respect to Rule 373 and 12b-3, I've got the numbers right, it relates back to the date of mailing. And the mailbox rule would apply? Correct. But the mailbox rule would have to apply if it was a proper certificate saying the affidavit, that the documents were filed with or mailed to the appellate court in a timely manner. Is that not missing? I believe, in the totality of the record here, we have supported enough evidence to show that that was, in fact, the documents that were filed here on the 19th through the mail sent from Naperville on the 18th. Are you aware of the Secura case? Yes, I am. How do we disregard that case? I don't think we are asking you to disregard Secura case. It establishes a pro-mailing policy for appellate process pursuant to Rule 373 with respect to notices of appeal filed in the circuit court as well as petitions for review filed here in this court. In Secura, there was not any certificate, I'm sorry, certified mail return receipts. There was a cover letter issue, which I think the certified mail is a stronger proof of when it was actually mailed and received by the court than a cover letter. So I think there's some distinction that can be made there. Well, you seem to be saying, if I can follow up the essence of the argument is, and I understand the logic, the court here put together the totality of all of these documents to discern that it was timely filed, although you seem to be acknowledging that there was nothing in the certification or in the body of the notice filing affidavit that says when it was mailed to the clerk of the court. You're asking us to look at all the documents together. Is that sort of what you're saying? In part, but there is a statement in the, I believe, Notice of Appeal and the Petition for Review, stating that on December 18th, we filed those documents with the court, and here's the certificate of service to the parties of those with the notices of filing. But again, nothing certifying that it was mailed to the court. Correct. That is correct. And we only get to this if we are looking at the 13th of November as the date of service, presumed under the board's rule, based upon the November 10th order. Well, you're looking at two different things, I think. You're looking at timeliness versus a proper service. Whether it's timely or not, I think, is really not what Justice Hudson is talking about, more so was it served properly based on the Sakura. Also, with respect to the, and I think you had mentioned the copy of the receipt from the post office, wasn't that appended to your reply brief? Correct. So are you allowed or able to supply or supplement the record on a reply brief if you didn't put it in the original brief? Can I address the first part to that? There's two issues here. We only get to the second issue if the date of service is either the 13th of November or some other date right in there. Well, let's assume that the service is timely. Let's assume that the service is timely, and now let's go to the proper service. If the November 19th is the date of the order being served upon me, which we believe that is the correct date, then clearly we are within 35 days of that date when it is received by the clerk on December 19th, 30 days later, not 35 days later. So we don't even get to this argument. Okay. The argument, just to reiterate, only applies if we find that the village is required to file a petition for review on December 18th, you're saying? Correct. You're suggesting it's a later date than that? Correct. We do not get served with any copy of any order from the labor board until I receive a copy of the November 13th order on November 19th, 2008, in the Chicago office. Is there any argument that you had actual notice of the fact that it had been issued on November 13th? I don't know what opposing counsel is going to say, but assuming they make that argument, what's your response? My response would be that if Mr. Brosnan had said, we issued that already, Carl, then I had notice. But by saying, I believe it's been issued, I'll check into it and get you a copy if it has, that's a different story. Well, weren't you supposed to stop on your way out the door and then use the bot too? If I had gone around outside the interior hearing room door, I would have come back through the reception area and it would have been there, yes. Presumably it would have been there by the time I left. I don't know if it was there or whether they gave it to me when I showed up the next day. I'm assuming it was at that reception desk, but I don't know that it's a fact. When you say you showed up the next day, you mean the 19th? The next hearing date in the Oakland matter, yes, was November 19th. Well, what about the board's rule that it presumes the service of a document upon acquired is complete three days after mailing? When was it mailed? The November 13th order, never. The November 10th order, according to the board, it was issued and mailed on November 10th from the Springfield office. This would have meant that arguably they're going to say that November 13th, though, was the date. That would be the presumed date of receipt of that, but the rule says that that's just a presumption. It can be rebutted. And it was rebutted how? By my office never receiving it and my affidavit to that effect. All right, so the conversation you had, that was on the... 13th. 13th? 13th of November, yes, sir. And the document that was left for you to pick up on the 19th, that you picked up, that you got on the 19th, that's dated the 10th? That's dated the 13th. That's dated the 13th. Correct. And I'm still confused here. So what happened to the one on the 10th? Ms. Moss received it. I did not. Is it the same order? Is it just dated differently? No. There's minor differences in the language. The unit description is the same, but it's got a date of November 13th, and it's not signed by the executive director. The November 10th one's signed. There was also a tally of the vote and a couple other documents with the certification of representation. And the one that Justice Husserl was just talking about, there's presumption that they mailed it to you that you said you could overcome. The presumption there is that which one was mailed to you? The Labor Board's documents show that on November 10th, they mailed to my office the November 10th order. So presumably under the Rule 1230C, we would have received it by the 13th unless we rebut that presumption. All right. Thank you. The union raises another procedural issue, saying the November 13th order was not a final appealable order. It was the only order signed or received by us. The allegation is since it wasn't a signed order, it was not an appealable one, citing Rule 272 of the Supreme Court rules, which is not applicable here. It's not one of the rules incorporated. Is that 15 or 5? No, your time's up. Go ahead and do something. You've got another 10 minutes. You've got a rebuttal to show. Yeah, I'll do the rebuttal on the merits unless we spend all the time in that on this as well. Thank you. May it please the Court, my name is Gerald Post. I'm an assistant attorney general, and I represent the Illinois Relations Board. With regard to the beginning of the time period, this is the first time that I've heard counsel say explicitly that the period began to run on November 19, although there was an allusion to that. I'm sorry, it's the first time you've heard what? Counsel argued that the time period begins to run from November 19, although there was some allusion to that toward the end of his reply brief. In actuality, the time period has to begin from November 13 under either reference to the November 10 document, which was mailed to him on the 10th. And incidentally, the last page of the record provides the evidence of when that was mailed. Let's take it step by step. You've got the record of when that was mailed, so there's a presumption that it's based on that record. It's presumed it's mailed. Is he correct that he can overcome that presumption with his affidavit saying he didn't get it? There is a recent appellate court decision addressing the First District, which unfortunately the name is Casey, addressing specifically who can overcome the presumption, and it is the party who is relying on that can overcome the presumption. So he is correct on that point. I believe I'll have to double-check that case. So if somebody has an affidavit, the board has an affidavit, we've mailed it to this place, and the guy says, I never got it, then the presumption is false. It's evidence that he never got it, and Mr. Otteson did in his affidavit say he never received that document. Now, he instead relies on this other document, which was printed up on November 13. And according to his affidavit, they had agreed that Mr. Brosnan would have somebody leave it at the front desk for him. I submit that that's then put in his possession on November 13, if that was their understanding, if he put it there for him to pick up. I don't understand why that would postpone to November 19 simply because he didn't bother to pick it up. Well, let me ask you a question about that, though. I mean, the rules of service are you serve somebody by mail or you serve them in person, and you seem to be assuming that leaving it at some other location for somebody is sufficient service. I mean, what does the rule say about it? It says serve by mail, or I don't know what the rule is. It says you can just leave it. I mean, you can serve it at – I don't know what the rule says in this situation, what the applicable rule is, but I just need you to tell me that it says it's broadly worded enough that leaving it with some receptionist someplace is sufficient service. I do not – certainly the board's rule doesn't specifically address this precise scenario, but if the parties have agreed, I would like to see that. We'll leave it at the front desk for you to pick up after the hearing. Well, what about the – I don't think we have a factual dispute, though, because he's saying that – what's his fellow's name, Brosnan? Right. Brosnan. Executive Director Brosnan. He just said to us now that – I mean, I don't know what the factual record shows here. He's saying Brosnan did not say to him, I know this is there, I will leave it here for you, pick it up, or – he said the conversation wasn't that specific, so I don't know what the record shows in it. This is the last page of the reply brief, the affidavit, Mr. Otteson. Executive Director John Brosnan stated he would leave the certification representative of the NC case for me at the front desk, Chicago House, November 13. I neglected to pick it up. He also says just before that I was president of the Illinois Labor Relations Board Office on November 13. So that is the evidence regarding that. Counsel, candidly, isn't this become a little problematic? Because, I mean, I can see you arguing, look, you know, I took counsel at his word, he's an officer of the court, et cetera, but you can see how that can become problematic if that rule got applied in other contexts. Somebody gets a call and says we have a summons, we can only have these, come into the department and pick it up, and then the party doesn't come in to pick it up. Is that going to become the equivalent of a service of summons because somebody doesn't come in when they've agreed to do it? I mean, can't you see the problem that would create if we filed a presumption of somebody following up on their statement? Well, I think that summons is probably not a very good analogy here. I think instead to look to the Granite City decision referenced by the union about a party noting it has an obligation to follow the court and to make sure he doesn't blow the time when the order has issued from a court, even though he did not receive the order. Here, Mr. Otteson admitted that on the 13th, Bronson said, I believe that's already issued. Carl, I'll leave a copy for you at the front desk. So he was aware that something had already issued. Does that become a case law to support the fact that when he's put on actual notice in that manner, that becomes equivalent to service? I do not have reference to any case law other than the Granite City decision referred. And I understand that there's been also a recent Supreme Court decision issued October 8 along the same lines that no one has cited. But that proposition is there. But I think my fundamental argument is that it's a November 10 document is the final order. So that's what I was getting at. Do we know that the document that Brosnan – that Brosnan actually left a document at the desk for counsel to pick up? He picked it up on the 19th. But I understand he says that somebody had to actually hand it to him. Well, he just told us it was sitting on a counsel table when he went in the hearing room. Oh, OK. That's what he just said a minute ago. So based on the record – And it does have that odd date of November 13 on the top of it, which suggests to me that it must have been printed up on that date, someone having accessed the wrong file on the board's computers. Well, that was my next question. The first question is, do we know that anything was left for him at the desk? I mean, taking it that he forgot to go by the desk and pick something up, do we know that anything was waiting for him there? I have no evidence supporting that. And getting past that question, do we know what was waiting for him there? Was it something dated November 10 or November 13? And does it make a difference? Well, what he picked up on the 19th was dated November 13. Right. And it was not a copy of the final order. Right. It looked to be the preliminary draft. In fact, even the name of the person who mailed these things, Laurie Novak, out of the Springfield office, is mistyped as Shannon Novak, I noticed this morning. So there are a number of mistakes on that. Clearly it was a document intended to be signed. It was not signed. So the one that was given to him on the 19th, we're going to presume what? That it was or was not the one that may have been there on the 13th at the desk? Yeah. I think the only assumption you can make is that it was the one that was available to him on the 13th. That it was the one that was available. Yeah, it was the one, yes. And so that one is not the final order? That is not the final order. So has he ever been served with the final order? Yes. The evidence is that he was mailed with that document. No, but I mean, but I thought we. . . He never received service, so. . . Yeah, I'm sorry. I mean, has he rebutted that presumption? I thought we kind of agreed he had with his affidavit. I'm not going to hold you to that, but I mean, his position is he can rebut that and. . . Yeah, I know Ms. Moss had obviously received it at the normal course of events. People do receive those things. Well, if in fact he's rebutted that, I just want to. . . I'm sorry to interrupt you, but if he has. . . Assuming he's rebutted that he received the one that was mailed on or about November 10th, that was dated November 10th, is there any other time when he's received it? That's all that we know. Does the record show he's received it ever? Nothing other than the fact that we mailed it on that date. Yeah, okay, I'm sorry. Go ahead. This whole column for you reminds me of an issue that I think is looming in the undercurrent here. Who's the finder of fact in all of this? I mean, Justice O'Malley raises a good question. How do we know the order is where it was supposed to be? We're sort of, again, operating on a lot of assumptions and presumptions that it was at the front desk, but there's nothing definitive. Are we supposed to make a finding of fact that it was on the desk? Who's supposed to do this? I think you have to ascertain your own jurisdiction from the documents submitted to you. I guess it would have to fall on you. What about the board? Isn't that something the board would do? Do we make findings of fact here? Is that what you're suggesting? The board evidenced that it sent out its notice on the 10th, that it sent out its decision on the 10th. But he's rebutted that, and I think his questions are well put. If we were to conclude that under the case law, you've been candid enough and in enough integrity to acknowledge the case floating around, and it says the attorney with an affidavit could rebut that presumption, it seemed to me your fallback position would have to be on these date issues is that the 10th, when he became aware of the fact something was, quote, unquote, laying on a desk, if that's the case, then the meter would start running presumably from that date. Sure. But who makes that determination it was laying on the desk? That's a pretty critical issue. Yes, I'm afraid I think it has to fall on this Court. I don't know why the board would, after issuing a final decision, have jurisdiction to consider additional issues on that. I think the only conclusion you can have from the affidavit is that, indeed, it had been issued and sent on the front desk given the date on the document is the 13th. The agreement was to leave it there on the 13th. And it was available six days later when he came back to resume his hearing. And we would base that on part of the facts that we would be basing that on is that it's a mistake. We'd be concluding that it had to be sitting there because there's something unique about the date of the 13th because this document was never supposed to be shown to anybody, and it's obviously a mistake. It's a draft that was never signed, and it's got mistakes all over it, and it's got the wrong date on it. Right. And based on that, we're going to assume that that's the document that was waiting for him, and that's the wrong document to be waiting for him anyway. Right. He was aware of the issuance of the decision when Mr. Brodkin told him that he believed it had been issued. The obligation is on the appellant, of course, to establish his own jurisdiction here, and he has not here. Well, that's what I was trying to get at. You said he was aware that the decision had been issued, and that's what I'm trying to get at earlier. His awareness is one thing, service on him is another, and service is normally done in a couple of ways, and I'm not sure service is allowed even by leaving at a desk. But is awareness enough, or does it have to be? He still has to be served. He couldn't just become aware of it and then be charged with it. The only evidence is that it had indeed been served on him by him placed in the mail. I interrupt you on that point. I'm sorry. That is not the only evidence because he's got an affidavit that says he didn't get it. He didn't get it. So that. So there is a possibility of the mail being misdelivered. But now the fundamental point is that mailing it is service, whether it gave him sufficient notice that he would be aware of that, and, of course, he was through the conversations. I think whether you look at the November 10 document or the documents dated November 13, he had access to both of them, or either by the 13th, either on the presumption of mailing or by the fact that the letter document was left for him on the 13th. And consequently, that's the start date, not November 19. Also, I must submit that this entire argument that it started from the 19th has been weighed by not having been presented in the opening brief, despite the revised jurisdictional statement, despite arguments on that point. In fact, it wasn't even explicitly presented in the reply brief. It was kind of alluded to toward the conclusion of the reply brief. I said this is the first time where he has said the start date is November 19. So that was somewhat a surprise for me. If it's November 19 and the court received it on December 19, that would, of course, be 30 days. And that's okay? That would be okay. That would be within the 35-day period of time. All right. Well, I guess somebody's got other questions. Maybe we could hit the merits on something. This is probably my least favorite aspect. I wanted to turn next to the mailbox rule. I know that's not on the merits. I know my time is up, too. No, we've covered a lot of questions. Go ahead. There was confusion here. The mailbox rule, I know the Champaign-Urbanic case states that it does apply to petitions for review, but I submit that's contrary to the Illinois Supreme Court's decision in ESG Watson, particularly McGaughey, which says that the administrative review in the circuit court should be the same as administrative review. Relax. We'll let you argue. Look at you in the chair. We have all afternoon. We have nothing else to do. I appreciate your indulgence in involving me going on like this. Well, if you forget something, just mail it to us. I think this is an important point for us. A petition for review initiates the judicial proceedings, just like a complaint initiates judicial proceedings in the circuit court. Everyone knows you cannot file the complaint by mail. The filing date isn't when you throw it in the mail.  And similar documents that initiate judicial proceedings in the circuit court will, too, 1401 petitions have cited those cases. McGaughey says the practice before the circuit court and before the appellate court should be similar on these administrative review. Their authority comes from similarly worded constitutional provisions, and consequently, because administrative review is only available by statute, it has to be strictly construed, and all of that basic theory on administrative review requires that it actually be received in the court by the 35th day. So if the start date is November 13, it had to be received in the court within 35 days by the 18th. It clearly was not here. Finally, on the evidence of his mailing the documents to this court, I know that he has the green cards now that something had been mailed from his office on the 18th, and counsel received service of it, and there's a certificate that he mailed it to counsel. But he does not have what SECURA requires, as Justice Hudson stated. SECURA goes to... I think I stated that. I apologize for... But SECURA goes to Rule 12b-3, and there is no document that states that. On page 6 of the reply brief at the very bottom, counsel refers to this notice of filing a petition for review. I was not aware of that document. I came to the clerk's office here before filing my brief and looked through everything that the court had received on December 19th. I don't recall having seen that document. However, counsel for the union did receive service of a document titled this. Now, I don't... Maybe it's the same mailman. Well, it didn't arrive to the court, but the other documents did arrive to the court. But anyway, so I was not aware of this document. I've just now seen it. As he describes it, it says that we filed it with the appellate court. It does not say what the appellate court's address is or any of those other things that 12b-3 requires. So even as described, and incidentally, it's not attached as Exhibit A to my reply brief. I don't know where that is. But it doesn't meet the requirements of SECURA. And consequently, I think I still have to contend that they failed to evidence that they mailed it properly. And finally, of course, they specifically disavowed appealing from the November 10 document, which I submit is the actual final order. I would have attributed it to mere scrivener's error in their initial petition for review, making reference to that, but they disavowed it. And consequently, if they're trying to appeal from this unsigned document, which appears to be a draft, I don't think they've established jurisdiction in this court. I apologize for taking over a long time here. If the court has any other questions with respect to the merits, I will turn it over to the Union's counsel, although I understand there has been no opening on the merits. And consequently, I would be hard-pressed to understand how to rebut anything anyway. So I'll turn it over to Ms. Moss. All right. Thank you. Thank you. Counsel. May it please the court. Lisa Moss on behalf of the Roselle Professional Firefighters Union. I appreciate your indulgence in this. I want to address specifically the merits of the petition, and I'll try and do it extremely quickly. The bottom line in this case is the employer contends there is no position of ship commander. However, if one were to look at the record, you would find precisely that there are references even in the collective bargaining agreement to such a position. Specifically, I would note that the collective bargaining agreement, Section 6.3, the first step of the grievance mechanism goes to a ship commander that's found at C-014 of the record. Perhaps more importantly, the wage scale in the collective bargaining agreement goes only as high as lieutenant, and at C-042, which is page 34 of the collective bargaining agreement, Appendix B, specifically there's a note that lieutenant position represents non-ship commander who is part of the bargaining unit. So essentially what the employer is saying to you is there is no ship commander position. There are only lieutenants, and that is precisely not what was discovered during the pre-hearing conference that I asked for because the position of the employer was so incoherent. And what's strange about this case is the ALJ, the administrative law judge, before she ruled on what the certification should be, specifically asked the parties to present what their position was for the appropriate unit. At C-067, the employer sends an e-mail to the administrative law judge describing the bargaining unit. Before this court, at page 12 of its opening brief, the employer seeks a completely different unit than the unit it sought before the labor board. And what essentially the employer is trying to do here is say there are no ship commanders. At the pre-hearing conference, which each of the parties attended with their counsel, I had present with me one of the ship commanders. If you walk into the station today, that person bears a tag that says ship commander. There are no lieutenants currently in the restructured fire department. There are ship commanders. Those individuals are not paid on the wage scale as indicated at appendix B. Rather, they are paid a different amount. So if you were to buy the employer's position that there are no ship commanders and you were to rule that for some reason there was an abuse of discretion by the administrative law judge in ruling that the instant unit is the appropriate unit for purposes of bargaining, you would find that we would leave a group of current ship commanders unrepresented because they are not lieutenants. The employer's position in this case all along has been completely inconsistent, and it appears to me that the only purpose in arguing that there should only be lieutenants in this particular instance is to take those individuals as ship commanders and remove them from their ship commander position back down to lieutenant and pay them at a lower salary than they're currently receiving, the salary that appears in the existing collective bargaining agreement. I just want to note one other thing, and that is with respect to the petition for unit, and that is the employer says that there are job descriptions, and those job descriptions don't describe a ship commander position. There need not be a job description for a ship commander position because the position was created after the reorganization of the department, which created the deputy chief position. And if one were to look at the job descriptions in this record, you will see that in the case of the lieutenant, that job description was in fact created back in 1997 before the reorganization and before the union even represented the current bargaining unit before the certification. If you were to look at the job description for the lieutenant acting as a ship commander, it was created with a date that preexisted, again, the reorganization of the department. At page C063 of the record, it was created in February of 2001. Again, the lieutenant position at C059 was February of 1997. The reality is that after the deputy chief position was created in February of 2008, no new job descriptions conforming to the new job duties were ever created. So what the employer essentially says is forget what the administrative law judge did. There is no position of ship commander, yet the collective bargaining agreement refers to it. There are no current job descriptions for it, and as a result, it forces the employer to take inconsistent positions. I would urge the court to look at the email I referenced and what the employer is asking this court to do and now find a completely different bargaining unit than that which was certified by the administrative law judge. Based on the record that was developed in this case and the pre-hearing conference, the ALJ determined there were no issues for hearing, that the appropriate unit was the petitioned for unit, and there certainly is no abuse of discretion based on the record that that is the unit that should be affirmed. Thank you. May I just stick to the merits? Yeah, it's okay with me. I'll try. I'll answer any questions you might have, though. Let's start with the job descriptions. Both of them, one has class title, fire lieutenant, and the very last page has a parenthetical 6-96-REV.2-97. So it was originally created in June of 96, revised in 97. The fire lieutenant, Perrin, in the capacity as shift commander job description, has the same 6-96 creation date with the revision of 2-01, and if we wanted to get into the facts of this case, we'd really find out that that was created, or the amendments to it as it was revised in 2001, was done after the certification of the original bargaining unit, and it added Perrin in the capacity as shift commander and made other changes because for the first time the village was able to designate three of the lieutenants as shift commanders under Section 3R of the Labor Relations Act. That designation is special to fire departments where there is no rank between the highest company officer, lieutenant here, and chief. We did not have a deputy chief until February of 2008. Once the village created that deputy chief position, the village lost the ability to designate three of the company officers, the lieutenants, as supervisors under Section 3R, and the designation that the labor statute has is shift commander. That's what's been used because that's what's in the labor statute here. It does not change the fact that the rank, the permanent rank, and the only rank these individuals have is of lieutenant. The village has never had a rank of shift commander. It has had fire lieutenants assigned or designated at its will to the position of shift commander. What the union is seeking to do here is establish two ranks, lieutenant, shift commander, then the rank of deputy chief, in order to justify increased wages for their members. I understand that. Are they lieutenants now or are they just shift commanders? They're lieutenants. Their rank is lieutenant. Right, but you said they're trying to create three different, lieutenant, shift commander, and deputy chief since 2008. Correct. But you don't, based upon what the firefighters say, you don't have three different ranks. You have two. You have shift commander and deputy chief, and there are no lieutenants. Their permanent rank is lieutenant. We do not have any rank of shift commander. But you have people calling themselves shift commanders. Correct. You have anybody calling themselves lieutenant. We call the shift commanders lieutenants. I know, but you're not calling them lieutenants. They are both. You're saying that there's three different ranks. You have the deputy chief. You have some guys calling themselves shift commanders. Who's calling themselves lieutenants? Well, the union lieutenants are not calling themselves lieutenants because they want to be shift commanders. The village board, the village administrator, the village officials, the fire chief, all believe that we only have lieutenants. That's the organizational structure. And by adding shift commander in here, the labor board and the union is seeking to amend the village's organizational structure to something it does not have. So they're not trying to add a rank. They're taking one away, basically. Well, they're wanting to reserve the lieutenant in case we add lieutenants and have the shift commander, which is somehow a higher position, even though they do the exact same job as a company officer. That is the only job they perform. Yes. Counsel, there's another looming legal issue here that we need to talk about, and that is the fact that, notwithstanding your argument, the board issues an order certifying a bargaining unit that includes the positions of shift commander, correct? Correct. We don't have a de novo review. The review of that is abuse of discretion. Is it not? That depends. In the Wooddale case, we had a record with facts that was presented to this court, and the court had a clearly inappropriate standard that they used, and it seemed to be against the manifest way of the evidence. So I'm not sure exactly what standard we have in this because the Wooddale case mentions two different standards for review appropriateness of certifications. I believe it's either a pure question of law here, because we did not have a factual record, and under the Labor Board's definitions, you cannot have supervisors and non-supervisors in the same unit, and you are not to use functions under the board's rules for job or unit descriptions unless there's an agreement by the parties to do so. I don't understand why I'm asking the question, because if it's an abuse of discretion, it's a higher hurdle for you to get over. There's a certain amount of deference then given to the board's finding that the positions of shift commanders are within the description, and the meaning legally of abuse of discretion is we have to find a no reasonable person or persons who would have taken the positions the board did. It's a fairly high hurdle to overcome. But that was not the standard this Court articulated in Wooddale. Right, but I want to hear your opinion or your position on if it is we decide a manifest wait. How is the board's finding encapsulized form against a manifest wait? Okay. I believe that it's a question of law de novo with an alternative argument that it is one whether contrary to law or against a manifest wait. I believe the evidence is what we're looking at for your review of an administrative agency decision with respect to certification of the Labor Board's bargaining unit. The hurdle is overcome when you look at what the board, the act, and the rules provide for bargaining units, who can be in and who has to be excluded from bargaining units. You cannot have supervisors and non-supervisors in the bargaining unit. And the board in Section 3R designates shift commander as a supervisor position and yet inserts shift commander in this bargaining unit, which includes non-supervisors. So there it's contrary to its own definition in the statute. So it's contrary to law. So what's the board's standard rationale for finding a shift commander? Now it's getting your compelling argument, are in fact to be included within the description. Why did the board reach that conclusion? I believe that we have a job description that says fire lieutenant in the capacity of shift commander, and we use the title shift commander, but the important issue here is the rank itself, and it is fire lieutenant. I argue unsuccessfully clearly that if you were going to put in anything related to a shift commander, you need to use the job title, which is fire lieutenant in the capacity of shift commander. That is what the labor board was required to do under its own rules, and they ignored the act about keeping supervisors excluded from the bargaining units, and they ignored their own rules with respect to bargaining unit composition and using job titles, not functions, and just ignored it. I don't know why, but that's what the bottom line was, and I want to address that. Before you hold that thought, I just want to make sure I understand. If these people in question were lieutenants and company officers, wouldn't they also be supervisors then and shouldn't be in the same bargaining unit, whether they have sometimes a title shift commander or not? The only way that the lieutenants were eligible to be excluded from bargaining in the first place is because we did not have that rank between lieutenant and chief under the board section 3R. This is something that's very unusual. Small departments only can have four supervisors, where much larger departments can only have two supervisors excluded from bargaining. So it's a little quirk in the statute, but it's been there since 1986. And then when the Counselor for the Union was up here, she made a point that there's no lieutenants anymore, there's only shift commanders, and then my colleague was asking some questions about that. And your position is they're all lieutenants, and they're acting as open-press shift commanders. Correct. Are there any lieutenants now who are not serving as shift commanders? All three lieutenants are currently designated shift commanders, but their positions and jobs have changed with the deputy chief taking over the administrative responsibilities that they used to have. So they are still called for operational purposes, and this is well beyond the record, but mutual aid box alarm systems in the state of Illinois is like 1,200 fire departments, and they go and aid each other on a daily basis as well as in the event of an emergency declared disaster by the governor or the president. I am counsel for Mavis. But anyway, we like to have from a neighboring department coming in somebody of a title if they're going to take over, and shift commander works better for that. We don't have battalion chiefs in the village of Roselle, so the former fire chief thought it was best to keep the designation of shift commander for operational purposes. It doesn't change the fact that they are lieutenants, and their job description is a lieutenant serving in the capacity of a shift commander. The real dispute comes down to you. You don't have a problem with these folks being in the bargaining unit. We have a problem with the term shift commander without a lieutenant serving as a shift commander in the unit description. So your position is it will result in three positions. Correct. Who you think can be in the bargaining unit per law, and then this other position that they're angling to get is a higher position for more money, and as you said before, that makes perfect sense to me. But I heard that you have the answer to that question. My affidavit is the only thing that counters whether we received the November 10th order. I was one of the initial hearing officers in 1984 of the labor board. Twenty-five years ago last month, I was one of the initial, we called ourselves, hearing officers. The state called us then. My reputation is at stake here. I don't lightly come in and say I didn't get it. When John Brosnan indicated to me on the 13th of November that he thought it had issued, I guarantee you that I then checked the mail in my office for that order and was looking for it until I went back to the board on the 19th and found an order at my desk. So. Thank you.